# In the
# United States Court of Appeals
## For the Seventh Circuit

F I L E D

JAN 2 1 2005

**MICHAEL W. DOBBINS** *Petitioner.*
**CLERK, U.S. DISTRICT COURT**

No. 04-4104

IN RE: GALE NETTLES,

Petition for Writ of Mandamus to the
United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 CR 699—**Elaine E. Bucklo,** *Judge.*

SUBMITTED DECEMBER 8, 2004—DECIDED JANUARY 21, 2005

Before POSNER, RIPPLE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* After allegedly purchasing ammonium nitrate fertilizer from an undercover FBI agent and selling it to another undercover agent, who was posing as a terrorist, Gale Nettles was charged with several federal crimes, including attempting to damage and destroy a federal building, 18 U.S.C. § 844(f)(1)—namely the Dirksen Courthouse in downtown Chicago, the site of the federal courts in Chicago, including the United States District Court for the Northern District of Illinois. The case was assigned to Judge Bucklo of that court. Nettles moved to recuse her and the other judges of the court on the ground that since the plot involved a threat to the judges' safety, a trial presided over by any one of them would create an appearance of bias. 28 U.S.C. § 455(a).

2                                             No. 04-4104

Although the government supported the motion, Judge Bucklo denied it on the ground there had never been "any real danger" of damage to the building and she had no "actual fear of harm" that might influence her rulings in the case.

The petition for mandamus seeks recusal of Judge Bucklo and the other judges of the Northern District on the ground that a reasonable observer would think there was "a significant risk that the judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). We must bear in mind that "these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990). Although the federal court of appeals for this circuit also resides in the Dirksen Courthouse, our recusal from considering the petition is not sought. But we will have to take up the question of our recusal at the end of this opinion.

The cases (none in this court) that have addressed the issue of recusal based on threats have held that a threat to a judge that appears to be genuine and not just motivated by a desire to recuse the judge requires recusal. *United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003); *Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995); *United States v. Greenspan*, 26 F.3d 1001, 1006-07 (10th Cir. 1994); *United States v. Cooley*, 1 F.3d 985, 993-94 (10th Cir. 1993). This is such a case. According to the indictment, Nettles, while serving a two-year prison sentence imposed by a judge of the Northern District, told a fellow prisoner that he wanted to destroy the Dirksen Courthouse, killing or injuring its occupants, by means of a truck bomb. The prisoner reported the threat, and the FBI gave him a phone number, to give Nettles, of a purported supplier of ammonium nitrate. Upon his release from prison Nettles called the number and made arrangements for the purchase—from an undercover FBI agent, of course—for resale to a purported terrorist (another undercover agent) who seemed willing and able to use

No. 04-4104 3

it to destroy the building. *Te-Ta-Ma Truth Found.—Family of URI, Inc. v. World Church of the Creator*, 246 F.Supp. 2d 980 (N.D. Ill. 2003). Since no proceedings against Nettles were pending in the Northern District, his actions could not have been taken with recusal, or some other tactic that might delay or derail a case against him, in mind.

Of course the actual threat to the Dirksen Courthouse was nil because Nettles's accomplices were federal agents. But the next time he might be more careful and succeed in his aim. A reasonable observer would think that a judge who works in the Dirksen building would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants. It is true that if Nettles is innocent, and therefore not a threat, the judge's incentive to convict him would be eliminated or at least attenuated. But (it might appear to the reasonable, but outside, observer of the judicial system) a judge might be convinced of Nettles' guilt yet concerned that a jury might acquit him, and might therefore rule against him on evidentiary and procedural issues, regardless of the merits. And innocence is not the only question in a criminal trial; the length of the sentence is another, and it is a question on which the judge retained significant discretion under the federal sentencing guidelines even before *United States v. Booker*, 2005 WL 50108 (Jan. 12, 2005).

We do not suggest that Judge Bucklo would in fact be prejudiced against Nettles. The issue is appearances. With reluctance we conclude that Nettles is entitled to a writ of mandamus directing the recusal of Judge Bucklo and any other judge of the Northern District.

However, there is a further issue to consider. Although as we said Nettles has not asked us to recuse ourselves from ruling on his petition for mandamus, he did ask the district judge not only to recuse herself but, before doing so, to transfer the case to another circuit, so that the appellate judges in

4                                    No. 04-4104

the Dirksen Courthouse would not decide any appeals in his criminal case. The petition for mandamus does not discuss the transfer issue directly, but does refer to the arguments that Nettles made in the motion he filed in district court, including the argument that the judges of this court would appear prejudiced if we were to hear his appeal. Although we feel ourselves to be no more prejudiced against Nettles than Judge Bucklo does, a reasonable observer might conclude that, should he be convicted and sentenced, and appeal, he would no more get a fair shake in our court that he would in the district court, since the appellate judges in this courthouse are as menaced by an Oklahoma City style attack as the district judges.

No purpose would be served by requiring Nettles to renew his transfer motion in the district court, before a judge brought in from outside the Northern District, or to make a subsequent motion to recuse the members of this court. A more efficient method of proceeding is for us to recuse ourselves now, to be replaced by judges from other circuits who will be designated to hear any further proceedings instituted by Nettles in this court.

A true Copy:

         Teste:

                               *Clerk of the United States Court of*
                               *Appeals for the Seventh Circuit*