

**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAY 2 7 2005 WH
MAY 27 2005
**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 04 CR 699 |
| | ) | |
| GALE NETTLES | ) | Hon. John F. Keenan (by designation) |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION FOR SEVERANCE OF COUNTS

The UNITED STATES OF AMERICA, through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, submits the following response to defendant's Motion for Severance of Counts. For the reasons set forth below, defendant's motion should be denied.

### I.    BACKGROUND

On September 1, 2004, a grand jury returned a nine-count indictment against defendant Gale Nettles. Count 1 charged defendant with attempting to damage and destroy by means of an explosive a federal building, namely, the Everett M. Dirksen building in Chicago, Illinois (the "Dirksen building") (18 U.S.C. § 844(f)(1)), from December 2003 to August 2004. Count 2 charged defendant with attempting to damage and destroy by means of an explosive a building used in interstate commerce, namely, the Dirksen building (18 U.S.C. § 844(i)). Count 3 charged defendant with attempting to provide material support to terrorism (18 U.S.C. §§ 2339A and 2) in August 2004, alleging that he sold over 1000 pounds of ammonium nitrate fertilizer intending that it be used to create a bomb in furtherance of a terrorist act. Count 4 charges defendant with making counterfeit United States Currency from May to July, 2004 (18 U.S.C. § 471). Counts 5-9 charge defendant with unlawful distribution of counterfeit United States Currency on four separate occasions in and

between May and July, 2004. Defendant contends in his motion that the counterfeiting Counts, 4-9, should be severed from Counts 1-3.

The investigation of defendant is outlined in an affidavit in support of a complaint. In summary, while serving a two-year federal prison sentence imposed by a judge in the Dirksen building for counterfeiting offenses, defendant told a fellow inmate about a possible plan to destroy the Dirksen building using a truck bomb. Defendant asked the inmate if he had a source of ammonium nitrate fertilizer (which had been used in the bomb that destroyed the Alfred P. Murrah federal building in Oklahoma City, Oklahoma). The inmate cooperated with the FBI and provided defendant with a telephone number purportedly of an individual who could assist defendant with obtaining ammonium nitrate fertilizer. Upon his release from prison, defendant called the phone number and ultimately met with an undercover FBI task force officer to discuss the purchase of fertilizer.

During that initial meeting, defendant told the undercover officer that the federal courthouse downtown is blocking the view of the lake. He explained that he had a problem with the whole federal judicial system and wanted to construct a bomb powerful enough to collapse the entire building. Defendant also told the undercover officer during the meeting that defendant was into "graphic arts" and made money the "old-fashioned way," apparently referring to counterfeiting. Defendant explained that he needed time to get his money together and explained his plan to counterfeit money when he got his computer back from his attorney.

In a series of conversations with the undercover officer, defendant made clear that his ability to finance his bomb plot would depend on his success in counterfeiting money. The officer provided defendant with some of the materials defendant said he needed to complete his counterfeiting, and

defendant ultimately sent the officer $9000 in counterfeit currency, as charged in Count 9. After receiving this, the officer told defendant that the counterfeit money defendant sent would sufficiently cover the cost of ammonium nitrate fertilizer.

While negotiating with the undercover officer, defendant asked a cooperating witness ("CW") if she could introduce him to someone affiliated with terrorist organizations. The CW had been purchasing counterfeit currency from defendant during the investigation, and she received from defendant the counterfeit currency at issue in Counts 6, 7, and 8. Following defendant's request, the CW introduced defendant to someone purporting to be involved in terrorism but who was actually an undercover FBI special agent.

On August 4, 2004, defendant accepted from the undercover officer delivery at a storage facility he rented of approximately 500 pounds of purported ammonium nitrate fertilizer. On August 5, 2004, while directing the undercover officer, defendant delivered over 1000 pounds of additional purported ammonium nitrate fertilizer to the purported terrorist. Shortly thereafter, defendant accepted $10,000 from the purported terrorist, and defendant was arrested.

## II.    ANALYSIS

The counts alleged in the indictment are appropriately joined in the indictment, and trial should occur on all 9 counts together.

Rule 8(a) of the Federal Rules of Criminal Procedure permits the joinder of multiple offenses "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two more actions or transactions connected together or constituting parts of a common scheme or plan." Rule 14 "'leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of

3

the district courts.'" *United States v. Moore*, 115 F.3d 1348, 1362 (7th Cir.1997) (quoting *Zafiro v. United States*, 506 U.S. 534, 541 (1993)).

In this case, defendant's counterfeiting efforts were part of a common scheme and plan to destroy the Dirksen building with a truck bomb. Defendant made clear throughout the investigation that his counterfeiting would finance his bomb plot. In fact, apart from modest Social Security benefits, defendant had no known source of income and no other means to finance his plot. Moreover, during his dealings with an informant who was purchasing counterfeit money from defendant, defendant asked the informant if she knew anyone affiliated with a terrorist group. Ultimately, defendant sold ammonium nitrate fertilizer to a purported terrorist to whom he was introduced by the informant.

Defendant does not identify any particular unfair prejudice he would face if the counts were tried together. Indeed, he would face the same challenges that all defendants face when defending against multiple counts of an indictment. There are no special circumstances here which justify the inefficiencies of conducting multiple trials.

4

## III.    CONCLUSION

For the reasons set forth above, defendant's motion for severance of counts should be denied.

> Respectfully submitted,
>
> PATRICK J. FITZGERALD
> United States Attorney

By:    JOHN C. KOCORAS
Assistant U. S. Attorney
219 S. Dearborn, Suite 500
Chicago, Illinois 60604
(312) 353-7602

## CERTIFICATE OF SERVICE

The undersigned attorney, John C. Kocoras, certifies that he is employed in the Office of the United States Attorney for the Northern District of Illinois; that on the 27th day of May 2005, he served a copy of the foregoing GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SEVERANCE OF COUNTS by placing the same in the United States mail addressed to:

Mr. John T. Theis, Esq.
Suite 220 - Barrister Hall
29 South LaSalle Street
Chicago, Illinois 60603

JOHN C. KOCORAS
Assistant U.S. Attorney